## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ADRIENNE ANDRY, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br><br>**v.**<br><br><br>**BENJAMIN MOORE & CO. INC.,**<br>**Defendant.** | **CASE NO.:  1:18-cv-1923**<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Adrienne Andry ("Plaintiff"), by her attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     This is a class action on behalf of a Class of all New York consumers who purchased Defendant Benjamin Moore & Co. Inc.'s ("Benjamin Moore" or "Defendant") "Natura" brand of interior paints, including, Benjamin Moore Natura Interior Paint - Flat, Benjamin Moore Natura Interior Paint - Eggshell, and Benjamin Moore Natura Interior Paint - Semi-Gloss (the "Natura Products").  Defendant labeled (and reinforced that labeling with an advertising and marketing campaign) the Natura Products as a safe alternative to conventional interior paints, producing "Zero emissions" upon and after application.

2.     Specifically, through an extensive and comprehensive $50 million labeling, advertising and marketing campaign[1] directed at consumers, Defendant claimed that its Natura Products:  (1) were emission free; (2) were emission-free during or immediately after painting; (3) were free of harsh fumes; (4) were free of harmful chemicals; (5) would not emit any chemical or substance, including volatile organic compounds ("VOCs"), that caused material harm to consumers, including sensitive populations such as babies and allergy and asthma sufferers; (6) would not emit any chemical or substance, including VOCs, during or immediately after application, that caused material harm to consumers, including sensitive populations such as babies and allergy and asthma sufferers; and (7) otherwise had "Zero emissions" including "Zero VOCs."

3.     These "Zero emission" claims were prominently featured on the front panel of the Natura Products' labels.  Additionally, these claims were featured in various print, media and internet marketing and promotion materials.  For example, Defendant produced a 30-second television and video promotion in which a group of painters quietly entering a room filled with baby cribs and a baby and commence painting.  While a baby sleeps in a crib, a voiceover states: "If you want a paint with no harsh fumes; if you want a paint without harmful chemicals; if you want a paint that is safer for your family and the environment, only this can.  Natura by Benjamin Moore."  Upon completion of the mural, the painters leave the room and the baby wakes up, smiling and standing in the crib.  Screenshots of the commercial are reproduced below:[2]

---

[1] *See* Exhibit A (AdAge article titled "Benjamin Moore Starts $50 Million Ad Campaign, Its Biggest Yet", published March 23, 2015).
[2] https://www.ftc.gov/system/files/documents/cases/exhibit_a_video_bmftc000482.mp4.









4.    In light of the "Zero emissions" representations on Natura Products' labels, reinforced by the marketing campaign and the "Zero VOCs" labeling and marketing claim, a reasonably prudent consumer would not expect the Natura Products to have any emissions, including harsh fumes and harmful chemicals, upon or after application.  Indeed, as a result of

such false and misleading labeling (reinforced by its advertising and marketing and "Zero VOCs" labeling and marketing claim), Benjamin Moore was able to sell these purportedly emission-free Products to thousands of unsuspecting consumers in New York while profiting handsomely from these transactions.

5.      Defendant's representations, however, are false and misleading.  On July 11, 2017, Benjamin Moore settled charges with the United States Federal Trade Commission ("FTC") that it deceptively promoted products as emission-free or containing zero volatile organic compounds, including during and immediately after application.  That same day, the FTC published a Proposed Agreement Containing Consent Order, and Decision and Order in File No.  1623079. *See FTC, In the matter of Benjamin Moore & Co., Inc., Decision and Order* 1623079 (Jul. 18, 2017), available at https://www.ftc.gov/system/files/documents/cases/benjamin_moore_agreement_and_decision_ and_order.pdf ("Proposed Decision and Order"), attached hereto as Exhibit B.  Even though the Proposed Decision and Order has not yet been finalized and requires more extensive labeling and marketing changes, Benjamin Moore materially changed the labeling of its Natura Products in or about September 2017 to remove the "Zero VOCs" claim and to state "Zero emissions after 4 hours," effectively admitting that the Natura Products do in fact produce emissions, for a minimum of four hours after application.  Moreover, the Safety Data Sheet for Natura Products specifically states that inhalation "May cause irritation of respiratory tract," and recommends to "[a]void breathing vapors" and "[i]n case of insufficient ventilation, wear suitable respiratory equipment."[3] This implies that in addition to its "Zero emissions" claims being false and misleading, the Natura Products' emissions include VOCs rendering its "Zero VOCs" claim false and misleading as well. However, at a minimum, the Natura Products' "Zero emissions" labeling claim is false and

---

[3] *See* https://www.benjaminmoore.com/en-us/interior-exterior-paints-stains/product-catalog/nwip/natura-paint, and example at Exhibit C.

5

misleading as at least some emissions are being produced by Natura Products, whether VOCs or otherwise.  Discovery will reveal the true nature of these emissions.

6.    Plaintiff seeks relief individually, and as a class action, on behalf of a New York Class, as defined herein, for Defendant's violation of the New York General Business Law § 349 and New York General Business Law § 350 and gives rise to claims for Breach of Express Warranty under New York's Uniform Commercial Code, and for Unjust Enrichment under New York common law.

## **PARTIES**

7.    Plaintiff Andry, a resident of Kings County, New York, purchased two one-gallon cans of Benjamin Moore Natura Interior Paint - Flat in April 2015 from a Benjamin Moore retailer near her home in Brooklyn, New York.  Plaintiff Andry purchased the Natura Products based on the "Zero emissions" representation (reinforced by the Zero VOCs representation) on the products' labeling statements, which were viewed prior to the time of purchase and at the time of purchase. Based on these labeling statements, Plaintiff believed that the Natura Products she purchased produced no emissions upon application and relied on these representations and warranties in deciding to purchase the Natura Products, and these representations and warranties were part of the basis of the bargain.  Plaintiff not only purchased these Benjamin Moore Products because the labels said they produced "Zero emissions," but she paid more money for these Natura Products than she would have had to pay for other products that purportedly did not produce "Zero emissions."  Had Plaintiff known the truth that the Natura Products did not produce "Zero emissions," she would not have purchased these Natura Products, but would have purchased another brand of paint that truly did not produce emissions upon or after application or, if one was

not available, would have purchased other products that were less expensive than these Natura Products, such as other less expensive interior paints with "Zero VOCs."

8.      Defendant Benjamin Moore is a New Jersey corporation with its principal place of business at 101 Paragon Drive, Montvale, NJ 07645.  Founded in 1883, Benjamin Moore bills itself as North America's favorite paint, color and coatings brand.  Defendant manufactured, advertised, labeled, offered for sale, sold, and distributed paint products to consumers, including Natura Products, throughout New York using a network of more than 5,000 authorized retailers.

## JURISDICTION AND VENUE

9.      Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).  Diversity jurisdiction exists as Plaintiff is a New York resident and Defendant Benjamin Moore is incorporated in New Jersey and maintains its principal place of business in Montvale, New Jersey. The Class Plaintiff seeks to certify includes citizens and residents of New York.  The amount in controversy exceeds $5,000,000 for Representative Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the statutory penalties and injunctive and equitable relief sought.

10.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are located in this judicial district, and Defendant received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of the Natura Products from retail locations herein, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

Moreover, Plaintiff is a resident of Kings County, Brooklyn, New York and her purchase of the Natura Products were from a Benjamin Moore retail location within this judicial district.

## BACKGROUND

11.     Benjamin Moore was established in 1883 by Benjamin and Robert Moore. The company started with just one product, "Moore's® Prepared Calsom Finish," which was sold exclusively through independent retailers. The Company expanded over time and now offers six different lines of interior paint alone, including the Natura Products.  Moreover, Benjamin Moore proudly boasts of maintaining eight laboratories to keep the company at the forefront or product innovation with respect, *inter alia*, to the environmental safety of its Products.

12.     Benjamin Moore was acquired by Berkshire Hathaway in 2000.  On its website, Defendant boasts:

> With our acquisition in 2000 by Berkshire Hathaway, Benjamin Moore joined a family of companies under the direction of Warren Buffett, which embodies success and is distinguished by sustainable brands that shine through the clutter of competition. We continue to be at the forefront of product innovation, with a commitment to research and development unrivaled in the architectural coatings industry. At Benjamin Moore laboratories and manufacturing facilities, our scientists and technicians work to exceed the already superior application, performance properties, ***and environmental safety of our products***.[4] (emphasis added)

13.     Paint consists of several components, including a tint or pigment suspended in a base or emulsion, followed by the addition of a solvent.  Pigments are finely ground, insoluble, dispersed particles that provide a coating formulation with color and opacity.  They also can function as fillers, reinforcements and property modifiers.  Pigments can be either natural or synthetic and inorganic or organic.  Historically, the base consisted of linseed oil, or another drying

---

[4] https://www.benjaminmoore.com/en-us/then-now-always.

oil, and other ingredients which were diluted with mineral spirits or other toxic substances. In the 1930's an acrylic base or emulsion was developed for paint which could be diluted with water.

14.     Solvents are substances that are used for viscosity adjustments or to maintain paint in proper consistency. VOCs are often used as solvents or thinners.[5] VOCs are organic chemicals that have a high vapor pressure at ordinary room temperature. Their high vapor pressure results from a low boiling point, which causes large numbers of molecules to evaporate or sublimate from the liquid or solid form of the compound and enter the surrounding air, a trait known as volatility.

15.     VOCs are a class of substances that evaporate easily and react in the atmosphere with sunlight and heat, creating smog and otherwise unhealthy breathing environments. Moreover, VOCs can trigger asthmatic or allergic reactions (depending on the compound), and even contribute to the formation of smog. More importantly, concentrations of many VOCs are consistently higher indoors (up to ten times higher) than outdoors.

16.     Today, interior latex house paints tend to be a combination of binder, in the case of Natura Products 100% acrylic, filler, pigment, and water. The transition from oil based emulsion to latex based emulsion transitioned interior paints from a predominantly organic to inorganic chemical composition. This transition was furthered by Benjamin Moore's introduction of waterborne tinting system to the marketplace in 2006 with its patented Gennex® Color Technology.

17.     By the transition from organic oil based emulsions and ingredients to the inorganic water based ingredients, paint companies such a Benjamin Moore were able to reduce VOCs in the basic chemical composition of some interior paints.

---

[5]  The FTC has defined VOCs as "any compound of carbon that participates in atmospheric photochemical reactions" other than those listed at 40 C.F.R. § 51.100(s). *See* Proposed Decision and Order.

18.     Over the last few years there has been a growing demand for safer interior paint products, those including low and/or zero emission and/or VOCs.  Driving the market for these types of products is an increased consumer awareness of the negative impact of these components and the desire to buy more environmentally responsible products.

19.     Further, most people spend the majority of their time indoors, commonly in the home. Young children, socially isolated seniors, caregivers, and individuals who work from home offices are among those who spend the vast majority of their time at home whereas school-age children and working adults typically spend 12-16 hours at home each day.  Given how much time people spend at home, achieving and maintaining good indoor air quality in residences is a key priority.

20.     In an effort to capitalize on this growing demand for safer products, Defendant marketed its Natura Products as not merely free of VOCs, but as producing "Zero emissions" altogether.  For example, the front label of the Natura Product prominently features the "Zero emissions" misrepresentation juxtaposed next to the claim the product is "Safer for your family" and accompanied by its "Zero VOCs" claim.   A screenshot of the label is reproduced below:



21.     Similarly, the label on the back of the Natura Product can states both "Zero VOCs according to EPA Method 24" and "No Harsh Fumes – Zero emissions detected according to CDPH/EHLB/Standard Method V1.1, 2010," as follows:



Both EPA Method 24 and CDPH/EHLB/Standard Method V1.1, however, only pertain to the measurement of VOCs, and establish no standard for, nor bear any relationship to, the measurement of non-VOC emissions from a 100% acrylic based latex interior paint tinted with a water based paint. Of course, Defendant's reference to these standards on the Natura Products' labels is unavailing for consumers either at the point of sale, or if they had time to review the

standards, as those standards involve dozens of pages of highly technical language beyond the knowledge and experience of the average reasonable consumer.  Moreover, Defendant's recent label change removing the "Zero VOCs" claims and now stating "Zero emissions after 4 hours" implies that the Natura Products have emissions for at least 4 hours that include VOCs.

22.     Benjamin Moore repeated these same "Zero emission" claims in its marketing, advertising and promotional materials.  For example, the Company's print brochure for Natura Products stated: "Zero emissions with no harsh fumes" and "Zero VOCs"



# AVAILABLE FINISHES



**THE BENJAMIN MOORE® ADVANTAGE:**

- Over 5,000 independent retailers and 200+ field & architectural representatives ready to help you

- A full selection of premium products for every job

- An architectural support program to help you specify the right products for any job

- On-site specification and inspection help for complicated or difficult jobs

- Value-added business programs and services for professional contractors

- The colors designers prefer



Benjamin Moore® is a proud member of the U.S. Green Building Council, a nonprofit organization of building industry leaders working to make environmentally responsible, profitable, and healthy buildings.

Contact your Benjamin Moore representative to learn more about Waterborne Satin Impervo® and the Benjamin Moore advantage.

To find a representative in your area, visit benjaminmoore.com or call 1-866-708-9180.

## FEATURES

- Zero VOCs*
- Zero emissions with no harsh fumes**
- Self-priming on most surfaces
- Dries fast for quicker return to service
- Excellent adhesion with a durable finish
- Available in over 3500 colors

## TECHNICAL DATA

| FINISH | CODE | VEHICLE TYPE | VOLUME SOLIDS % | COVERAGE Sq.Ft./Gallon | DRY TIME | VOC Grams/liter |
|--------|------|--------------|-----------------|------------------------|----------|-----------------|
| Flat | 0512 | 100% Acrylic Latex | 45.5 | 375-425 | Set to the touch 30 mins., To re-coat 1 to 2 hours | 0 |
| Eggshell | 0513 | 100% Acrylic Latex | 44.0 | 375-425 | Set to the touch 30 mins., To re-coat 1 to 2 hours | 0 |
| Semi-Gloss | 0514 | 100% Acrylic Latex | 37.0 | 375-425 | Set to the touch 30 mins., To re-coat 1 to 2 hours | 0 |

*Natura® Zero VOC primer is available under our Fresh Start® line of primers.*
*Safety Data Sheets and Technical Data Sheets are available at benjaminmoore.com.*



The Green Promise® designation is Benjamin Moore's assurance that its environmentally friendly coatings meet and often exceed the strictest industry standards.

Natura US Patent No. 8,507,579  •  Gennex® colorants U.S. Patent No. 7,402,627 & 7,922,814

© 2015 Benjamin Moore & Co. Benjamin Moore, Gennex, Green Promise, Natura, and the triangle "M" symbol are registered trademarks, licensed to Benjamin Moore & Co. The CERTIFIED ASTHMA & ALLERGY FRIENDLY Mark is a Registered Certification Mark of the ASTHMA AND ALLERGY FOUNDATION OF AMERICA and ALLERGY STANDARDS LTD. Cradle to Cradle Certified™ is a certification mark licensed by the Cradle to Cradle Products Innovation Institute. All other marks are the property of their respective owners. Printed in USA on recycled paper.

*Zero VOC according to EPA Method 24
**Zero emissions and/or no harsh fumes - No VOC emissions detected according to CDPH/EHLB/Standard Method V1.1, 2010

023906172244

/M2440523 8/2015



## NATURA IS GREEN WITHOUT COMPROMISE®

With zero VOCs, zero emissions and no harsh fumes**, Natura can have a positive impact on air quality. This is a truly environmentally friendly paint without sacrifice to performance or color integrity.



23.     Likewise, Benjamin Moore's website repeatedly claimed that the Natura Products were a "Zero Emissions Paint" and that "Natura goes beyond zero VOC to offer zero emissions, making it a safer paint for your family and the environment, all without compromise to performance or color selection."  Screenshots of the website are reproduced below:





### Natura® Zero-VOC and Zero Emissions Paint

Natura Waterborne Interior Paint continues Benjamin Moore's commitment to providing the most environmentally friendly paint. Natura goes beyond zero VOC* to offer zero emissions**, making it a safer paint for your family and the environment, all without compromise to performance or color selection. Natura is truly "Green Without Compromise®."



SAVE      PRINT      SHARE



24.     Additionally, Defendant's materially false and misleading marketing campaign includes representations made on its social media websites.  For example, Defendant's Facebook site repeatedly states the Natura Products have "zero emissions":





25.     Moreover, Defendant reiterates that the Natura Products are so benign, they are "safer for a nursery":



26.     In fact, when queried by a consumer as to whether the Natura Products were "safe" and "chemical free," a representative from Benjamin Moore reiterated that the products were "zero VOC, zero emissions and no harsh fumes."  A screenshot of the May 16, 2016 Facebook post is reproduced below:



27.     Defendant's zero emissions claims, however, are false and misleading.  On July 11, 2017, Benjamin Moore settled charges with the FTC that it deceptively promoted products as emission-free or containing zero VOCs, including during and immediately after application. A Proposed Decision and Order is pending final approval after a public comment period.  In the Proposed Decision and Order, the FTC defines the term "Emission" to mean "any compound that is emitted or produced during application, curing, or exposure of a covered product." *See* Proposed Decision and Order, p. 3.  To eliminate any confusion, in the FTC's Analysis to Aid Public Comment published in the Federal Register on July 18, 2017, the FTC explained:

> "Emission is any compound emitted from paint during application or thereafter and ***includes volatile organic compounds (or VOCs)***
>
> […]

The orders define "emission" to include all emissions (***not just VOC's that cause smog***).

(emphasis added).

FTC, Benjamin Moore & Co., Inc.; Analysis to Aid Public Comment, 82 FR 32818-01, *32820, 2017 WL 3017861 (Jul. 18, 2017), *available at* https://www.ftc.gov/system/files/documents/ federal_register_notices/2017/07/benjamin_moore_7-18-17_0.pdf (Exhibit D); *see also* FTC, In the Matter of Benjamin Moore & Co., Inc., File No. 162-3079, Analysis of Proposed Consent Order to Aid Public Comment, 2017 WL 3049127 (Jul. 11, 2017), *available at* https://www.ftc.gov/system/files/documents/cases/benjamin_moore_analysis.pdf.

28.    In its Proposed Decision and Order, the FTC prohibited Benjamin Moore from making unqualified "zero emissions" statements unless both content and emissions are actually zero, or emissions are at trace levels, beginning at application and thereafter, which "reflects [consumers'] concern about the potential health effects from exposure to chemical emissions found in indoor air, not just VOCs that affect outdoor air quality." *See* Analysis to Aid Public Comment, 82 FR 32818-01, *32820.

29.    The Proposed Decision and Order's definition of "trace level" generally tracks the "trace amount" test codified in the FTC's "Green Guides," and requires that emissions at trace levels do not (1) "cause material harm that consumers typically associate with emission, including harm to the environment and human health," and (2) that emissions do "not result in more than harmless concentrations of any compound higher than would be found under normal conditions in the typical residential home without interior architectural coating." *See* Analysis to Aid Public Comment, 82 FR at 32820; *see also* l6 C.F.R. § 260.1 et seq. As such, the FTC justifiably took action because Benjamin Moore's "zero emissions" statements, without qualification (*e.g.*, zero emissions after X number of hours/days), are misleading as they falsely indicated to consumers

they will not be exposed to potentially harmful emissions at the time of application, which is precisely when individuals are at the highest risk of exposure.

30.     After the FTC issued its Proposed Decision and Order and Order in July 2017 and even though that Proposed Decision and Order is not yet final, Benjamin Moore in or about September 2017 modified its Natura Products' labels to remove the "Zero VOCs" claim and to state "Zero emissions after 4 hours".   Additionally, Defendant removed the "*Safer For Your Family*" representation.   Below is a screenshot of the modified Natura Products' labels that Defendant initially began using which a corrective stick-on label saying "Zero Emissions after 4 hours" affixed over the portion of the old label with the old "Zero emissions" and "*Safer For Your Family*" representations:





Subsequently, Defendant began using entirely new labels for the Natura Products now claiming "Zero emissions after 4 hours," as shown below:





31.     Accordingly, Benjamin Moore's decision to update its "Zero emissions" statement to say "Zero emissions after 4 hours" constitutes an admission that its Natura Products give off emissions at greater than trace levels for up to four hours after application. This admission of fact will remain even if the FTC's Proposed Decision and Order is modified pending the FTC's review of public comments.  Thus, Benjamin Moore's "Zero emissions" statements, without the "after 4

hours" qualification, unlawfully, falsely and misleadingly conveyed to consumers that the Natura Products are emission free, both during and immediately after application.

32.     Additionally, the Safety Data Sheet ("SDS") for Natura Products contains an additional admission that inhalation, whether short or long term exposure to Natura Products "May cause irritation of respiratory tract."[6]  It is axiomatic that respiratory tract irritation would not occur unless there are some emissions from the Natura Products as Defendant now admits in its new labels.  This, together with the recent label changes, implies that the Natura Products' emissions include VOCs, which is consistent with the FTC's findings in the Proposed Decision and Order. Below is a screenshot of the 2015 SDS for the Natura Products:

| 51100 - FRESH START NATURA ZERO VOC PRIMER WHITE | | Revision Date: 28-Aug-2015 |
|---|---|---|
| Possibility Of Hazardous Reactions | None under normal conditions of use. | |
| **Product Information** | | |
| **Information on likely routes of exposure** | | |
| Principal Routes of Exposure | Eye contact, skin contact and inhalation. | |
| **Acute Toxicity** | | |
| Product Information | No information available | |
| **Information on toxicological effects** | | |
| Symptoms | No information available | |
| **Delayed and immediate effects as well as chronic effects from short and long-term exposure** | | |
| Eye contact | May cause slight irritation. | |
| Skin contact | Substance may cause slight skin irritation. | |
| Inhalation | May cause irritation of respiratory tract. | |
| Ingestion | Ingestion may cause gastrointestinal irritation, nausea, vomiting and diarrhea. | |
| Sensitization: | No information available | |
| Neurological Effects | No information available. | |
| Mutagenic Effects | No information available. | |
| Reproductive Effects | No information available. | |
| Developmental Effects | No information available. | |
| Target Organ Effects | No information available. | |
| STOT - single exposure | No information available | |
| STOT - repeated exposure | No information available. | |
| Other adverse effects | No information available. | |
| Aspiration Hazard | No information available | |

---

[6] *See* https://www.benjaminmoore.com/en-us/interior-exterior-paints-stains/product-catalog/nwip/natura-paint, and example at Exhibit C.

33.     The SDS also and recommends to "[a]void breathing vapors." and "[i]n case of insufficient ventilation, wear suitable respiratory equipment," as follows:

## 7. HANDLING AND STORAGE

**Handling**     Avoid contact with skin, eyes and clothing. Avoid breathing vapors, spray mists or sanding dust. In case of insufficient ventilation, wear suitable respiratory equipment.

## 8. EXPOSURE CONTROLS / PERSONAL PROTECTION

**.....**

**Personal Protective Equipment**
**Eye/Face Protection** Safety glasses with side-shields.
**Skin Protection** Protective gloves and impervious clothing.
**Respiratory Protection** In case of insufficient ventilation wear suitable respiratory equipment.

34.     A paint with zero emissions is material to consumers, including environmentalists, health-conscious people, and sensitive populations such as babies and allergy and asthma sufferers, who willing pay a premium for such products.

35.     Benjamin Moore's labeling and marketing claim that its zero emissions statements are based on the California Department of Health's Standard Method for the Testing and Evaluation of Volatile Organic Chemical Emissions from Indoor Sources Using Environmental Chambers, V. 1.I, 2010 ("Standard Method").  The purpose of the Standard Method, however, is to determine VOC emissions, which are more narrowly defined and does not encompass all emissions.  Similarly, the label as revised after the Proposed Consent and Order claims the representation of "Zero emissions after 4 hours" is based upon the Standard Method as well as ASTM Standard Guide D 5116 ("Standard Guide").  Like the Standard Method, the Standard Guide only pertains to VOCs and is only a guide "not a standard test method and must not be construed as such."  Thus, because the Standard Method and Standard Guide only measure VOCs,

the Natura Products may well have emissions beyond the 4 hours Defendant now admits to when all emissions (not just VOCs) are considered.

36.     Benjamin Moore made a far broader and more encompassing representation by labeling its Natura Products as "Zero emissions" as opposed to simply saying the Natura Products contained and produced "Zero VOCs".  As set forth above, the Natura Products' labels and marketing materials do not limit the representations to "Zero VOCs" but also claim "Zero emissions" – right next to each other.  Moreover, the Natura Products marketing materials claim the Products produce no "harsh fumes," despite the SDS for the Natura Products that concedes they "May cause irritation of respiratory tract."  Benjamin Moore's decision to include representations that Natura Products produce "Zero VOCs," "Zero Emissions" and no "Harsh Fumes" clearly implies and is intended to persuade consumers that "Zero emissions" is broader than just VOCs and encompasses all emissions, including harsh fumes.  Moreover, the front of the Natura Products' label made no reference to the basis for the "Zero emissions" statement, and it is only the back of the label that referenced the Standard Method.

37.     Significantly, Benjamin Moore's modified "Zero emissions" statement disclosing emissions up to 4 hours references on the back of the label the same Standard Method as its prior "Zero emissions" labeling statement that did not disclose emissions up to 4 hours, effectively admitting disclosure of emissions up to 4 hours is consistent with, if not required by, the Standard Method.  Thus, juxtaposing the "Zero emissions" and "Zero VOCs" statements on the Products' label (front and back alike) without disclosing the emissions up to 4 hours or the short and long term inhalation hazard was inherently false and misleading, when in actuality the Products have emissions, at a minimum, up to 4 hours as Benjamin Moore's new labeling statements admit.

38.     The materiality of labeling the Natura Products with the "Zero emissions" statement is obvious.  The FTC has made similar misleading claims an enforcement priority, as evidenced by its previously approved final orders settling similar charges against Sherwin-Williams and PPG for making false and unsubstantiated claims that their products contained zero VOCs after tinting and by entering into proposed settlement agreements with three of Benjamin Moore's competitors regarding similar misleading emissions statements.[7]

39.     Furthermore, in its Analysis to Aid Public Comment, the FTC opined that consumers are concerned about all chemical emissions, not limited to VOCs. According to the FTC: "Consumers are likely concerned about the potential health effects from exposure to chemical emissions found in indoor air, not just VOCs that affect outdoor air quality." *See* Analysis to Aid Public Comment.  Thus, Defendant's false and misleading "Zero emissions" claim on its Natura Products' labeling and in its Natura Products' marketing has a broad impact on consumers seeking a truly emissions free paint and who purchased Natura Products that unbeknownst to them have emissions, including emissions that "May cause irritation of respiratory tract."

40.     The materiality of the "Zero emission" representations is also demonstrated by the price premium Benjamin Moore was able to charge for its Natura Products.  Benjamin Moore's Natura Products cost between $54.99 and $69.99 per gallon, a substantial premium to comparable "Zero VOC" paints that do not also claim to have "Zero Emissions."   For example, Benjamin Moore charges less for its "Ben" interior paints, which are advertised as having zero VOCs, but do not claim to have zero emissions. Specifically, Benjamin Moore's "Ben" interior paints cost

---

[7]  *See* FTC, Paint Companies Settle FTC Charges That They Misled Consumers; Claimed Products are Emission- and VOC-free and Safe for Babies and Other Sensitive Populations (Jul. 11, 2017); available at https://www.ftc.gov/news-events/press-releases/20 l7/07/paint-companies-settle-ftc-charges-they-misled-consumers-claimed (includes links to FTC Complaints against Benjamin Moore, ICP Construction, Inc., YOLO Colorhouse, LLC, and Imperial Paints, LLC).

retail for about $40 per gallon depending on the finish and color. The same is true of Benjamin Moore's "Regal" paints advertised as "Zero VOCs" and retailing for about $15 less then Natura Products. Likewise, competitors Glidden and Behr market Zero VOC paints which retail for $21 and $25 per gallon, respectively. These are but a few examples of many alternative Zero VOC paints that are significantly less expensive than the Natura Products.

41. Pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair or deceptive acts or practices in or affecting commerce," the FTC has the authority to take action if a paint manufacturer makes a claim that its products contains "Zero emissions" when they give off emissions at greater than "trace levels." Any violation of the FTC Act is a violation of New York law and support a claim for violation of GBL §349. *See State by Lefkowitz v. Colorado State Christian Coll. of Church of Inner Power, Inc.*, 76 Misc. 2d 50, 54, 346 N.Y.S.2d 482, 487 (N.Y. Sup. Ct. 1973) ("the legislative purpose in enacting §349 of the [GBL] was to follow in the steps of the [FTC] with respect to the interpretation of deceptive acts and practices outlawed in Section 5 of the [FTC Act]").

42. Thus, Benjamin Moore's conduct, including its false and misleading "Zero emissions" statements without qualification when its Natura Products give off more than trace amounts of emissions constituted violations of the FTC Act (as the FTC found here), which in turn are also violations of New York law. *See, e.g., State by Lefkowitz,* 346 N.Y.S.2d at 487. More specifically, Benjamin Moore's mislabeling, false and misleading advertisement and promotion of the Natura Products is a deceptive practice in violation of New York Gen. Bus. Law § 349, and false advertising in violation of New York Gen. Bus. Law§ 350. It also gives rise to claims for breach of express warranty under N.Y. U.C.C. § 2-313, and under common law of New York for unjust enrichment.

43.     In accord with N.Y. U.C.C. § 2-313 and New York' s General Business Law, and any other laws requiring pre-suit demand and notice, Plaintiff gave written notice of the facts and claims asserted herein to Benjamin Moore on January 31, 2018, a copy of which is attached hereto as Exhibit E.  Thirty days have lapsed since the date of this notice and Benjamin Moore has not responded to Plaintiff's notice, let alone taken any steps to address or redress Plaintiff's claims.

## DEFENDANT FRAUDULENTLY CONCEALED ITS WRONGS

44.     Benjamin Moore has now admitted, both through its relabeling and through the Products' Safety Data Sheet (SDS) that Natura Products labeled as producing "Zero emissions" did in fact produce more than trace amounts of emissions, including emissions harmful to consumers, at a minimum, for the first four hours after application.  Defendant further concealed the existence of these emissions by citing to the Standard Method in both the labeling and marketing of Natura Products, which unbeknownst to consumer as discussed in paragraph 21 herein, applied only to VOCs and not to inorganic emissions unique to latex interior paints.

45.     Moreover, like the Natura Products, Defendant's Ben and Regal paints are advertised as "Zero VOCs" and their SDS each say "May cause irritation of respiratory tract" and contain the same respiratory warning reflected in paragraph 33 herein.  However, unlike the Natura Products, the Ben and Regal paint labels each contained the following respiratory risk warning:



The absence of this (or any) respiratory risk warning on the Natura Products' labels together with the "Zero emissions," "Zero VOCs and "No harsh fumes" claims on those labels further concealed the existence of emissions in the Natura Products. This is especially true when a consumer in a Benjamin Moore authorized retailer where all these products are next to each other compares the "Zero emissions" Natura Products to the Ben and Regal "Zero VOCs" paints that retail for $15 to $30 less, respectively, than Natura Products.

46.     A reasonably prudent consumer buying the Natura Products at a Benjamin Moore authorized retailer would have no reason to suspect the Natura Products labeled "Zero emissions" did produce more than trace amounts of emissions, at a minimum, for the first four hours after application.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff seeks certification of a class under Fed.R.Civ.P. 23 (b)(1), (b)(2), (b)(3) and/or (c)(4), as may deemed appropriate by the Court. Plaintiff Andry brings this action on behalf of herself and on behalf of all other persons who purchased from an authorized Benjamin Moore retailer in the State of New York Defendant Benjamin Moore's Natura Products at any time prior

to Defendant changing the Natura Products labels to say "Zero Emissions after 4 hours" (herein throughout, the "Class"). Excluded from the Class are: (i) Defendant Benjamin Moore and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

48.     Upon information and belief, there are thousands of members of the Class.  Indeed, Defendant admitted in a recent court filing that "according to Benjamin Moore's records, it has sold 990,528 gallons of Natura Paint Products in the United States between January 2014 and September 2017. Therefore, individual joinder of all members of the Class would be impracticable.

49.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

50.     Common questions of law or fact exist as to all members of the Class.  These questions predominate over the questions affecting only individual Class members.   These common legal or factual questions include:

a.      Whether Defendant labeled Natura Products as producing "Zero emissions;"

b.      Whether Defendant's "Zero emission" labeling of the Natura Products was likely to deceive Class Members;

c.      Whether Defendant's representations are unlawful; and

d.      The appropriate measure of damages and/or restitution.

51.     The Class is ascertainable because its definition is objective and specific.  Class Members may be identified through claim forms or receipts.  Additionally, Class Members may be identified through records of authorized retailers selling Defendant's Natura Products in New York.  Certain authorized retailers maintain "reward" programs, pursuant to which consumers provide their name and personal information and are issued a "reward" card.  These retailers

encourage consumers to display their "reward" card when making purchases by offering discounts and other incentives exclusively to consumers who show their "reward" card when making purchases.  As a result, retailers who use "reward" card programs retain records sufficient to show which Class Members' "reward" cards are associated with purchases of Defendant's Natura Products.  Moreover, because the false and misleading "Zero emissions" misrepresentations appear on the actual labels of the Natura Products, there is no concern that the Class includes individuals who were not exposed to the misrepresentation.

52.     Plaintiff Andry's claims are typical of the claims of the Class, in that she is a consumer who purchased Natura Products in New York that were labeled and marketed as producing "Zero emissions" and "Zero VOCs."   Plaintiff Andry, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

53.     Plaintiff Andry is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

54.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual member of the Class will likely be relatively small, especially given the cost of Natura Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class to effectively redress the wrongs done to them through individual actions.  Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation.   Individual actions also present the potential for inconsistent or contradictory judgments, which would be dispositive of at

least some of the issues and hence interests of the other members not party to the individual actions, would substantially impair or impede their ability to protect their interests, and would establish incompatible standards of conduct for the party opposing the class.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

55.     Further, in the alternative, the action may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## NEW YORK LAW COUNTS

## COUNT I

### (Deceptive Acts or Practices, New York Gen. Bus. Law. § 349)

56.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff brings this Count I individually and on behalf of the members of the Class.

58.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting the Natura Products produced "Zero emissions" (reinforced by its "Zero VOCs" claim) when they in fact produced emissions, at a minimum, in the four hours after application.

59.     The foregoing deceptive acts and practices were directed at consumers, and have had a broad impact on consumers in New York.

60.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and ingredients of the Natura Products to induce consumers to purchase the Natura Products.

61.     Plaintiff and members of the Class were injured because they paid for the Natura Products labeled "Zero emissions" (reinforced by its "Zero VOCs" claim), which they would not have done had they known the truth that the Natura Products in fact produced emissions, at a minimum, in the four hours after application.

62.     Plaintiff and members of the Class were injured because they paid a price premium for the Natura Products labeled "Zero emissions" (reinforced by its "Zero VOCs" claim), which they would not have done had they known the truth that in fact produced emissions, at a minimum, in the four hours after application.

63.     Plaintiff, on behalf of herself, other members of the Class to recover actual damages or $50.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT II

### (False Advertising, New York Gen. Bus. Law. § 350)

64.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

65.     Plaintiff brings this Count II individually and on behalf of the members of the Class.

66.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

67.     Defendant's Natura Products' labels' claims the Natura Products produced "Zero emissions" (reinforced by its "Zero VOCs" claim) were false, misleading and deceptive statements and representations of fact that were directed to consumers.

36

68.     The Natura Products' labels' false, misleading and deceptive "Zero emissions" statements and representations of fact (reinforced by its "Zero VOCs" claim) have resulted in consumer injury and harm to the public interest.

69.     As a result of the Natura Products' labels' false, misleading and deceptive "Zero emissions" statements and representations of fact (reinforced by its "Zero VOCs" claim), Plaintiff has suffered and continue to suffer economic injury.

70.     Plaintiff and the Class suffered an ascertainable loss caused by Defendant's Natura Products' labels' "Zero emissions" misrepresentations (reinforced by its "Zero VOCs" claim) because they purchased and paid more for the Natura Products, which they would not have done had they known the truth about the product.

71.     Plaintiff, on behalf of herself and other members of the Class, seeks to recover actual damages or $500.00, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## COUNT III

### (Breach of Express Warranty, N.Y. U.C.C. § 2-313)

72.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

73.     Plaintiff brings this Count III individually and on behalf of the members of the Class.

74.     Benjamin Moore is and at all relevant times was a merchant under N.Y. U.C.C. § 2-313.

75.     By labeling the Natura Products as producing "Zero emissions" (reinforced by its "Zero VOCs" claim), Benjamin Moore, as the designer, manufacturer, marketer, distributor, and/or

seller of the Natura Products expressly warranted that these Natura Products produced "Zero emissions."

76.     In fact, the supposedly "Zero emission" Natura Products produced emissions, at a minimum, in the four hours after application.

77.     Plaintiff and members of the Class were injured as a direct and proximate result of Benjamin Moore's breach of these warranties because they would not have purchased the Natura Products had they known the truth that these warranties were false.

## COUNT IV

### (Unjust Enrichment)

78.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff brings this Count IV individually and on behalf of the members of the Class.

80.     By selling the Natura Products falsely and misleadingly labeled "Zero emissions" (reinforced by its "Zero VOCs" claim) which in fact produced emissions, at a minimum, in the four hours after application, Benjamin Moore obtained money from Plaintiff and members of the Class.

81.     By virtue of the unlawful conduct described herein, Benjamin Moore will be unjustly enriched if it is permitted to retain the money it obtained from Plaintiff and members of the Class for Natura Products falsely and misleadingly labeled "Zero emissions" (reinforced by its "Zero VOCs" claim).

82.     In equity and good conscience, Benjamin Moore should be required to return to Plaintiff and the Class the amount they paid to purchase these Natura Products.  Otherwise,

Benjamin Moore will be unjustly enriched and Plaintiff and members of the Class will be left without adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class request an award, relief and entry of a judgment, as follows:

A.      An order certifying that this action is properly brought and may be maintained as a class action; that Plaintiff Andry be appointed representative of the Class; and that Vozzolo LLC and Feinstein Doyle Payne & Kravec, LLC be appointed Co-Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiff and members of the Class paid to purchase Benjamin Moore the Natura Products or paid as a premium over non-zero emission or Zero VOC alternatives for Causes of Action for which it is available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory damages allowable under New York Gen. Bus. Law §§ 349 and 350-e.

E.      Punitive damages for Causes of Action for which they are available.

F.      An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre- and post-judgment interest.

G.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies Benjamin Moore received as a result of the misleading, fraudulent and unlawful conduct alleged herein.

H.      Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

DATED:  March 29, 2018

**FEINSTEIN DOYLE PAYNE**
**  & KRAVEC, LLC**

By:  */s/Joseph N. Kravec, Jr.*
    Joseph N. Kravec, Jr. (No. JK-3696)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone:  (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

**VOZZOLO LLC**

By:  */s/Antonio Vozzolo*
    Antonio Vozzolo (No. AV-8773)

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile:  (201) 604-8400
Email: avozzolo@vozzolo.com

*Counsel for Plaintiff and the Proposed Class*